# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 11-cr-0381 (SRN/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Robert Allen Walker, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This case came before the undersigned United States Magistrate Judge for a pretrial motion hearing on November 14, 2013. Benjamin F. Langner and David J. MacLaughlin, Assistant United States Attorneys, appeared on behalf of the United States of America. Aaron J. Morrison and Peter B. Wold appeared on behalf of Defendant Robert Allen Walker. The case was referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Presently before the Court are Defendant's Motion to Suppress Search and Seizure of Information Controlled by Everyone.net (ECF No. 95), Motion to Suppress Search and Seizure of Items Located at His Residence (ECF No. 96), and Motion to Strike (ECF No. 97). For the reasons set forth below, the Court recommends that all three motions be denied.

**I.  Defendant's Motion to Suppress Information Seized from Everyone.net**

On August 28, 2013, the Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota, issued a search warrant for property described as "information associated with bobwalker@spearhead-group.com that is stored at premises controlled by

everyone.net."[1] Federal Bureau of Investigations Special Agent Jared Kary ("Kary") applied for the warrant and provided a lengthy affidavit in support of the application. The application listed the relevant crimes as criminal contempt, in violation of 18 U.S.C. § 401; witness tampering, in violation of 18 U.S.C. § 1512(b); and wire fraud, in violation of 18 U.S.C. § 1343. Defendant now moves to suppress emails seized from the search of the bobwalker@spearhead-group.com email account on the ground that Kary's affidavit did not establish probable cause to believe that Defendant committed criminal contempt, wire fraud, or witness tampering.

The probable cause standard is a "practical, nontechnical concept[]." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). The duty of the judge who signs the warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit must establish a "nexus . . . between the item to be seized and criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 307 (1967). There must also be a nexus between the contraband and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

In reviewing a search warrant for probable cause, the Court must give "great deference" to the issuing court's original determination. *Gates*, 462 U.S. at 236 (quotation omitted). If the issuing judge relied solely on the affidavit in assessing probable cause for the warrant, the reviewing court may consider "only that information which is found within the four corners of

---

[1] The Government did not bring the contested search warrants to the pretrial motion hearing, and the Court granted the Government leave to submit the warrants and related paperwork to the Court after the hearing. Defendant did not object to this procedure. The documents in the packet of materials provided by the Government are neither marked nor cumulatively paginated. Therefore, all references to the exhibit are made generally.

the affidavit . . . in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982).

A. **Criminal Contempt and Wire Fraud**

All of the factual allegations summarized in this section were taken from Kary's affidavit of August 28, 2013. Defendant was initially indicted in this matter on December 20, 2011. He was arraigned and released on bond the following day. One of the conditions of his release was that he would not violate any federal, state, or local laws. Another special condition prohibited him from engaging "in any activities that involve the exercise of fiduciary duties in connection with raising funds on behalf of entities including any public or private entities."

A grand jury issued a Second Superseding Indictment against Defendant on April 9, 2013, charging him with mail fraud, wire fraud, and tax evasion. In broad terms, Defendant was accused of treating Bixby Energy Systems, Inc. ("Bixby") as a personal asset for the purpose of enriching himself and his family while serving as a corporate officer and member of the board of directors. Defendant allegedly misled more than 1,800 shareholders into believing that Bixby had developed a revolutionary energy-production system. Even after charges were brought against Defendant, he continued to direct Bixby's business affairs through at least three unwitting shareholders. Kary interviewed two of the shareholders, Patti Gardner ("Gardner") and Patricia Katterheinrich ("Katterheinrich"), and obtained emails sent to them from Defendant's everyone.net account.

In July 2012, Defendant began communicating with Gardner and Katterheinrich via his everyone.net email account about replacing the sole member of Bixby's board of directors. Defendant recruited the third unwitting shareholder, Sandra Newvine ("Newvine"), to serve as the sole board member beginning on May 1, 2013. Defendant had resigned as a corporate officer

3

and director by this time, however, and thus had no legitimate reason to be involved in Bixby's business affairs. Defendant even acknowledged via email that he was prohibited from participating directly in Bixby's affairs and had been instructed explicitly not to do so by his attorney. Nevertheless, through emails sent from his everyone.com email account, Defendant encouraged Katterheinrich to retain a local attorney to represent Bixby in business negotiations, solicited individuals to raise funds for Bixby, misrepresented that a $100 million investment was forthcoming, directed Gardner and Katterheinrich in their negotiations with a company named Abundant Resource Technologies ("ART"), made day-to-day operational decisions for Bixby, and advised Newvine on a sale of property owned by Bixby.

Several emails attached to Kary's affidavit confirmed that Defendant used the email address bobwalker@spearhead-group.com. Kary also learned that Defendant's son, Timothy Walker ("Timothy"), registered for the spearhead-group.com domain name and listed 900 159th Lane NW, Ramsey, Minnesota,[2] as the registered address for the domain name. This address is Defendant's last known address, as well as the location of his arrest on August 20, 2013. Kary determined that the administrative contact for the spearhead-group.com domain name was everyone.net. Everyone.net provides a variety of online services such as email accounts and online storage options. Email messages and other information stored by subscribers are stored on everyone.net's servers.

The Court finds that the facts set forth in Kary's affidavit of August 28, 2013, established probable cause to believe that Defendant committed criminal contempt, in violation of 18 U.S.C. § 401, and wire fraud, in violation of 18 U.S.C. § 1343. The alleged facts established a nexus

---

[2] According to other evidence of record, the address is actually 9000 159th Lane NW, Ramsey, Minnesota, but the apparent typographical error is not material to the Court's probable cause review.

between the alleged criminal behavior by Defendant, Defendant's everyone.net email account, and the emails Defendant sent to Gardner and Katterheinrich.

B.  **Witness Tampering**

In addition to the above allegations, Kary alleged the following facts relevant to witness tampering in his August 28 affidavit. One of the victims of Defendant's alleged fraudulent scheme was a company named Global Partners United, LLC ("GPU"). From 2009 through May 2011, Defendant had extensive interactions with three principals of GPU, including Jeff Wiseman ("Wiseman"), who will be the Government's principal witness at trial. Given Defendant's extensive dealings with Wiseman, he had reason to know that Wiseman would likely be a trial witness.

After the Second Superseding Indictment was issued, Defendant began tampering with Wiseman by providing false information to Newvine, which Newvine then gave to Wiseman. Specifically, in response to Wiseman's question to Newvine whether Bixby intended to make GPU whole, Defendant drafted a lengthy email, which he sent to Newvine from the bobwalker@spearhead-group.com email address. Defendant drafted the email not in his own voice, but in the voice of Newvine and other Bixby shareholders. Defendant claimed in the email that Bixby's failure and the loss to shareholders was caused by a conspiracy of three other individuals, conducted without his knowledge, and not by any fraud or dishonesty on his part. He further claimed that an independent team of shareholders had conducted an independent investigation into Bixby's activities and discovered the fraud supposedly committed by the other individuals. Newvine cut and pasted the email into a new email, which she sent to Wiseman.

Kary contacted Newvine on June 25, 2013, about the email to Wiseman and asked her where she had obtained the information. Initially, Newvine denied receiving the information

5

from Defendant, but she later admitted to the Government that she had forwarded the contents of Defendant's email to Wiseman, at the direction of Defendant.

The Court finds that Kary's allegations concerning the above activities established probable cause to believe that Defendant committed the crime of witness tampering, in violation of 18 U.S.C. § 1512. The alleged facts established a nexus between Defendant's everyone.net email account, the email Defendant sent to Newvine, and the crime of witness tampering. Consequently, the Court concludes that the items seized pursuant to the August 28 warrant should not be suppressed.

## II. Defendant's Motion to Suppress Items Seized from His Residence

On September 11, 2013, the Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota, issued a search warrant for property described as a single family home located at 9000 159th Lane NW, Ramsey, Minnesota. Kary was the applicant for this warrant as well, and his September 11 affidavit contained many of the same factual allegations as his August 28 affidavit. The Court will incorporate factual allegations by reference into this discussion when appropriate, bearing in mind that each affidavit must be assessed independently.

The September 11 search warrant application listed the same crimes as the August 28 application: criminal contempt, in violation of 18 U.S.C. § 401; witness tampering, in violation of 18 U.S.C. § 1512(b); and wire fraud, in violation of 18 U.S.C. § 1343. The specific items to be seized included paper or electronic documents pertaining to Bixby, communications to or from Defendant concerning Bixby's business affairs, documents reflecting Defendant's exercise of fiduciary duties or fundraising for any entity, computers, computer equipment, computer hardware, and data storage devices. As with the previous motion, Defendant challenges the search warrant on the basis of probable cause.

### A. Criminal Contempt and Wire Fraud

In addition to the factual allegations recounted in Part I.A, *supra*, most of which the Court incorporates by reference in this section,[3] Kary averred the following relevant facts in his September 11 affidavit.

Defendant communicated with Gardner, Katterheinrich, and Newvine through the email address bobwalker@spearhead-group.com. This email address was registered to 9000 159th Lane NW, Ramsey, Minnesota. Based on Defendant's email communications with these unwitting shareholders, Judge Leung determined after a preliminary hearing that Defendant had violated the conditions of his release and used the shareholders to continue to direct Bixby's business affairs and control the board of directors.

During an interview with an individual named Paul Friedrichs, the owner of ART, Kary learned that Friedrichs had sent materials related to negotiations between ART and Bixby to Defendant at Defendant's home in June 2013. Kary believed the materials remained at the subject premises. In September 2013, Defendant sent a letter to his wife in which he identified two boxes of Bixby emails, located at the subject premises, to give to Defendant's attorney. Defendant also suggested that his wife recycle all of the "old computer parts" located at the subject premises.

Kary learned that Defendant did not maintain an office outside his residence. Defendant's son Timothy was an information technology specialist and occasionally assisted Defendant with computer issues. After Defendant was placed into pretrial detention at the Sherburne County Jail, agents monitored his phone calls. On August 28, 2013, Defendant called Timothy at the subject

---

[3] The Court does *not* incorporate by reference those portions of the August 28 affidavit concerning the nature of the administrative contact everyone.net and the address Timothy provided when he registered the spearhead-group.com domain name. This information was not included in the September 11 affidavit.

premises and asked him to go to Defendant's home office and locate various computers and electronic devices. Defendant asked Timothy to delete information from certain devices and to hide other devices in Defendant's sock drawer.

Based on an allegation in the Second Superseding Indictment that Defendant's fraudulent activities began in 2001, Kary asked to seize documents going back to 2003. Kary also described Defendant's alleged illegal kickbacks going back to 2003 and documents relating to or reflecting those payments. Based on Kary's training and experience, he knew that individuals often retain documentation of assets and finances at their homes for many years and that even if computer files are deleted they frequently can be recovered by a forensic expert.

The Court finds that the allegations set forth in Kary's September 11 affidavit established probable cause to believe that Defendant committed criminal contempt, in violation of 18 U.S.C. § 401, and wire fraud, in violation of 18 U.S.C. § 1343. The factual allegations established a nexus between the subject premises, the listed items to be seized, and the criminal behavior.

### B. Witness Tampering

Kary included the same facts relevant to a finding of probable cause for witness tampering in both his August 28 affidavit and his September 11 affidavit. Thus, in addition to considering the factual allegations set forth in Part II.A, *supra*, the Court incorporates by reference the facts summarized in Part I.B, *supra*. The Court finds that these allegations established probable cause to believe that Defendant committed the crime of witness tampering, in violation of 18 U.S.C. § 1512. In addition, the information contained in the September 11 affidavit established a link between the subject premises, the items located therein, and the crime of witness tampering. Therefore, the Court concludes that the items seized pursuant to the September 11 warrant should not be suppressed.

## III. Defendant's Motion to Strike

Defendant moves to strike paragraph 16 and any other reference to alleged violations of securities laws (the "Paragraph") from the Third Superseding Indictment (the "Indictment"). He submits that he is not charged with violating any securities laws and that the Government is trying to bootstrap a securities fraud charge onto the mail and wire fraud charges.

In the Indictment, a United States Grand Jury charged Defendant with mail and wire fraud, among other charges. (*See* Indictment, ECF No. 86 ¶¶ 6-56.) As factual support for these charges and as part of the alleged scheme and artifice to defraud investors, the Indictment alleges that Defendant violated several United States securities laws, specifically, the Finders Rule, the Accredited Investors Rule, and the General Solicitation Rule. (*Id.* ¶ 16.) As Defendant acknowledges, the Indictment does not actually charge him with violating any federal securities laws, however. (*See id.* ¶¶ 51-72.)

Federal Rule of Criminal Procedure 7(d) authorizes a court to strike surplusage from an indictment on motion by a defendant. The Court should grant such a motion, however, "only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). In the case at hand, the Court finds that the factual allegations contained in the Paragraph are relevant to the charges of mail and wire fraud. As described in Defendant's motion, "mail and wire fraud have essentially the same elements of the offense," and the first element of such an offense is that the defendant intentionally and voluntarily devised or created a scheme to defraud another individual or entity out of money, property, or property rights, *see* Eighth Circuit Model Criminal Jury Instruction 6.18.1341 (2011). (Def.'s Mot. Strike at 1-2, ECF No. 97.) The Paragraph is relevant to at least the first element of mail or wire fraud because

it contains factual allegations detailing the actions comprising Defendant's alleged fraudulent scheme. The Paragraph is also relevant because it alleges that Defendant participated in the scheme even though he knew about the fraudulent nature of the actions. Because the factual allegations are relevant to a charged offense, they should not be struck as surplusage.

Moreover, one of the purposes of an indictment is to inform the defendant of the details of the charges against him and aid him in preparing a defense. *See United States v. Garrett*, 797 F.2d 656, 665 (8th Cir. 1986) ("The district court, in its discretion, may order the Government to provide requested additional detail where the particulars set out in the indictment fail sufficiently to apprise the defendant of the charges to enable him to prepare a defense."). The factual allegations contained within the Paragraph outline specific details of the mail and wire fraud with which Defendant is charged. Because the mail and wire fraud statutes are so broad, the Government is required to describe the alleged scheme with particularity. Had the Government not specified these details, it could have made itself vulnerable to an argument that the Indictment's allegations were insufficient.

At the hearing on the motion, Defendant brought two additional cases to the Court's attention, *Cleveland v. United States*, 531 U.S. 12 (2000), and *United States. v. Henderson*, 386 F. Supp. 1048 (S.D.N.Y. 1974), but conceded the cases were not on point. The Court agrees and finds that neither case is applicable to the present situation. In both *Henderson* and *Cleveland*, the defendant was seeking to dismiss an actual count of the indictment, not just strike a paragraph of factual allegations.

Defendant next argues that the factual allegations in the Paragraph would be inflammatory and prejudicial if read to a jury. This concern can be alleviated through a limiting instruction at trial. *United States v. Rehak*, No. 08-CR-0072 (PJS/SRN), 2008 WL 2828886, at

*8 (D. Minn. July 21, 2008). Relatedly, because the District Court will decide what is read to the jury, including any language from the Indictment, the District Court is in the best position to address Defendant's concerns at the time of trial. *See id.*; *see also United States v. Islamic Am. Relief Agency*, No. 07-00087-CR-W-NKL, 2009 WL 3062176, at *1 (W.D. Mo. Sept. 21, 2009).

## IV. Recommendation

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Search and Seizure of Information Controlled by Everyone.net (ECF No. 95) be **DENIED**;

2. Defendant's Motion to Suppress Search and Seizure of Items Located at His Residence (ECF No. 96) be **DENIED**; and

3. Defendant's Motion to Strike (ECF No. 97) be **DENIED**.


Dated: December 4, 2013

                                           s/ *Jeanne J. Graham*
                                           JEANNE J. GRAHAM
                                           United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 19, 2013**. A party may respond to the objections within fourteen days of the objections being filed. Any objections or responses filed under this rule shall not exceed 3,500 words. The district judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district judge is not required to review a transcript of the hearing in order to resolve the objections, the party making the objections shall timely order and cause to be filed within fourteen days a complete transcript of the hearing.