# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Robert Allen Walker,<br><br>Defendant. | Case No. 11-cr-381 (SRN/HB)<br><br><br><br>**ORDER** |

David J. MacLaughlin, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Andrew H. Mohring, Office of the Federal Defender, 300 S. 4th St. Ste. 107, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Robert Allen Walker's Motion for Release (("Motion for Release") [Doc. No. 269]) pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Walker seeks compassionate release and requests that the Court reduce his prison sentence to a restrictive supervised-release term because of the dangers posed by COVID-19. The Government filed a response in opposition to his Motion for Release. (Gov't's Opp'n [Doc. No. 274].)

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court grants Defendant's motion.

1

## I.     BACKGROUND

### A.     Procedural and Factual Background

In 2014, Mr. Walker was found guilty of twelve counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, one count of conspiracy to commit the same in violation of 18 U.S.C. § 1349, three counts of tax evasion in violation of 26 U.S.C. § 7201, and one count of witness tampering in violation of 18 U.S.C. § 1512(b)(1) by a jury. [Doc. No. 173.]  On October 2, 2014, the Court sentenced Mr. Walker to a 300-month term imprisonment.  [Doc. No. 202.]

Mr. Walker is incarcerated at the Federal Medical Center ("FMC") in Lexington, Kentucky.  He has a projected release date of December 5, 2034.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed June 26, 2020).

### B.     Parties' Arguments

Mr. Walker seeks compassionate release in light of the risks associated with the COVID-19 pandemic.  (Def.'s Mem. in Supp. of Mot. for Compassionate Release [Doc. No. 270] ("Def.'s Mem.") at 1.)  He argues that his advanced age and his preexisting health issues—which are documented in the Bureau of Prisons ("BOP") Medical Records—make him uniquely susceptible to COVID-19.  Specifically, he asserts that he is susceptible to the virus because he is a 77-year old man, suffering from atrial fibrillation, stage III kidney disease, Crohn's disease, and psoriatic arthritis.  (*Id.* at 2-3.)  He also alleges he is taking certain medications that suppress his immune system, "enhancing his vulnerability to serious complications from the COVID-19 virus."  (*Id.* at 2-3.)  Moreover, he contends that

his placement in a facility with a significant outbreak of COVID-19 cases impermissibly compounds his risk of contracting the virus. (*Id*.) Citing 18 U.S.C. § 3582(c)(1)(A), he argues that these risks present "extraordinary and compelling reasons" to grant his request for compassionate release. (*Id.* at 15-19.)

The Government opposes Mr. Walker's motion on three main grounds.[1] First, the Government asserts that he has failed to demonstrate "extraordinary and compelling reasons" warranting compassionate release. (Gov't's Opp'n at 5-17.) Although it agrees that he is at "higher risk for severe illness from COVID-19" according to the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC"), the Government contends that his circumstance does not warrant release due to the overall stability of his health and FMC's Lexington's adherence to BOP procedures. (*Id*. at 7-8.) Second, the Government argues that Mr. Walker has not met his burden to show that a reduction is warranted in light of the danger that he would pose to the community if released from prison. (*Id*. at 18-21.) Third, the Government contends that granting Mr. Walker's release from prison after having served only 31 percent of his sentence would "ignore the anguish of his victims," and "fly in the face of" the § 3553 sentencing factors. (*Id.* at 5, 15-17.)

---

[1] The Government does not assert that Mr. Walker has failed to exhaust his administrative remedies prior to seeking relief from the Court because he appears to have made a request for compassionate release to the Warden on May 4, 2020, to which the BOP did not respond. (Def.'s Mem. at 8-9.) Because 30 days have lapsed from the receipt of such a request, the Court may consider Defendant's present motion. *See* 18 U.S.C. § 3582(c)(1)(A).

3

## II.     DISCUSSION

### A.     The Law

"[A] court may not modify a term of imprisonment once it has been imposed" except pursuant to statute. *United States v. Kachina*, 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2. The compassionate release provision, as amended by the First Step Act, is such a statutory exception. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act[2] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release. *United States v. Stephenson*, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the

---

[2] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

> term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id.* The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described

5

categories." ³ *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, 13-cr-20653, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019) (further citations omitted)).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at

---

³ Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases and finding that courts "have the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

6

\*4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 2020 WL 2555332, at \*2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted)); *United States v. Cabrera*, 2020 WL 2549941, at \*2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted)).

    **B.**    **Analysis**

        **1. Mr. Walker Presents Extraordinary and Compelling Reasons Warranting Compassionate Release**

The Court now considers whether release under these facts is warranted. As explained above, the Sentencing Commission's guidance provides that an inmate's medical condition alone can sometimes be sufficiently extraordinary and compelling under § 3582(c)(1)(A). U.S.S.G. § 1B1.13 cmt. 1(A)(i) (noting that the condition must be "serious and advanced with an end of life trajectory" or "substantially diminish the ability of the inmate to provide self-care" within the facility and be one "from which he or she is not expected to recover."). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify compassionate release. U.S.S.G.§ 1B1.13 cmt. n.1(A)-(D).

Mr. Walker argues that the COVID-19 pandemic, in combination with his advanced age and serious medical conditions, warrants compassionate release. Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, the Court agrees with the findings of several courts that "mere speculation of the possibility of

7

contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 957 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3.

Against these standards, the Court finds that Mr. Walker sufficiently presents extraordinary and compelling reasons that warrant release. Mr. Walker is 77 years of age, which the Government acknowledges increases his risk "in the event of a COVID-19 infection" for severe illness according to the CDC. (Gov't's Opp'n at 8.) Moreover, the Government appears to acknowledge that the record demonstrates that his advanced aged, combined with certain medical conditions from which he suffers, significantly enhances his vulnerability to this virus. (Gov't's Opp'n at 8.) Specifically, his medical records demonstrate that he has, among other conditions, a serious heart condition—atrial fibrillation. (Gov't's Ex. 1 at 2.) Such a serious cardiac condition is a confirmed risk factor for severe illness should he contract the virus. CDC, *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-

8

ncov/need-extra-precautions.html (last accessed June 26, 2020). The Government in fact agrees that Mr. Walker is "in a category of persons considered by the CDC to be vulnerable to a risk of serious illness." (Gov't's Opp'n at 6.) Nonetheless, it continues to assert that (1) his medical records demonstrate that his conditions are being controlled and treated because he "is in reasonably good health for a 77-year old man;" and (2) the BOP has taken several measures at FCM-Lexington to curtail the spread of the virus. (Gov't's Opp'n at 8-14.) Thus, according to the Government, Mr. Walker has not established "extraordinary and compelling" circumstances warranting his release.

The Court disagrees. Mr. Walker's medical records demonstrate that his age and medical conditions, in combination with the risk posed by COVID-19 at FMC-Lexington, warrant compassionate release. Mr. Walker is 77 years old, which according to the CDC, places him at an intolerable risk in the context of COVID-19. The CDC expressly considers individuals above the age of 65 to be "at a higher risk for developing more serious complications" from the virus, noting that 80% of U.S. deaths from COVID-19 are from that age group. CDC, *Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/mmwr/volumes.htm.(last accessed June 26, 2020) (further noting that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent). Moreover, the Court agrees with the findings of other courts that his atrial fibrillation further heightens his risk of serious illness or death in the present circumstance. *See*, *e.g.*, *United States v. Hodges*, No. 04-cr-993-3, 2020 U.S. Dist. LEXIS 97259, at *6-7 (N.D. Ill.

9

June 3, 2020) (finding the combination of atrial fibrillation and imprisonment in a hotspot facility creates an extraordinary circumstance sufficient for compassionate release).

Mr. Walker also suffers from stage III chronic kidney disease. Contrary to the Government's assertion, (Gov't's Opp'n at 7), the CDC has recently included individuals "with chronic kidney disease of any stage" to be at an increased risk "for severe illness from COVID-19." CDC, *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions.html (last accessed June 26, 2020). Moreover, the Court agrees with the findings of several other courts that this risk, in the present context, warrants compassionate release. *United States v. Howard*, 4:15-cr-00018-BR-2, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (granting compassionate release, in part, because inmate suffers from serious medical conditions including stage 3 kidney disease); *United States v. Saad*, 2:16-cr-20197-DPH-MKM-1, 2020 WL 2251808, at *1 (E.D. Mich. Apr. 29, 2020) (granting compassionate release, in part, because 71-year old inmate suffers from "serious underlying and preexisting medical conditions" including chronic kidney disease); *United States v. Bertrand*, 3:00-cr-00012-LC-1, 2020 WL 2179387, at *1 (N.D. Fla. Apr. 29, 2020) (same); *United States v. Musumeci*, 1:07-cr-00402-RMB-1, [Doc. No. 58] (S.D.N.Y. Apr. 28, 2020) (granting compassionate release, in part, because 66-year old inmate suffers from kidney disease); *United States v. Sanchez*, 1:95-cr-00421-MGC-1, [Dkt. No. 290] (S.D. Fla. Apr. 27, 2020) (granting compassionate release, in part, because 76-year-old inmate suffers from "chronic kidney disease"); *United States v. Williams*, 3:17-CR-121-(VAB), 2020 WL 1974372, at *3 (D. Conn. Apr. 24, 2020) (granting compassionate

release, in part, because 62-year old inmate has a "history of being treated for kidney issues").

Indeed, although those with kidney problems appear to be severely impacted by COVID-19 with no precise explanation nor basis, one doctor concludes that the virus most likely "attaches to the kidney cells and attacks them," requiring patients to go through further immune weakening treatments and causing them to lose kidney function. Lenny Bernstein et al., *Coronavirus Destroys Lungs. But Doctors Are Finding Its Damage in Kidneys, Hearts and Elsewhere*, WASH. POST (Apr. 15, 2020), https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/.html (last accessed June 26, 2020). Moreover, because Mr. Walker donated a kidney to his son and only has one remaining, (Def.'s Mem. at 18) (citing PSR ¶ 171)), the Court agrees with his assertion that the virus could be "especially devastating" for him. (*Id.*)

The Government's argument that his medical conditions are "controlled" further misses the point. (Gov't's Opp'n at 6-7, 16.) That Mr. Walker may have been feeling healthy at particular check-ups does not negate his particularized susceptibility to the virus in light of his severe medical conditions. Moreover, contrary to the Government's assertions, (Gov't's Opp'n at 7), his medical records reveal that he takes regular immunosuppressants for his conditions that suppresses parts of the immune system. His prescribed medications therefore weaken his immune system. Having a weakened immune system means that he will have even more difficulty in fighting off COVID-19 should he contract it. *See*, *e.g.*, *United States v. Robinson*, 2020 WL 1982872, at *2 (N.D. Cal. Apr.

11

27, 2020) (noting that regimen of immunosuppressant medications for inmate with generally "compromised health" results in "greater risk of infection" from COVID-19). Thus, even if his symptoms are allegedly under control, as the Government speculates, the Court finds that his diagnosed medical conditions make him more susceptible to COVID-19, especially since he is 77-years old.

In fact, Mr. Walker's high susceptibility to the virus is reinforced by a BOP evaluation conducted on him by a provider, Dr. Katan Merchant (D.O.).  On March 27, 2020, Dr. Merchant opined that Mr. Walker's age and cardiac history placed him in the "high risk category" in the "setting of a COVID-19 infection:"

> I/M Walker R. 17193-041 is a 77 year old Caucasion male with a medical history of atrial fibrillation, vitamin D deficiency, psoriasis and chronic kidney disease. While he does not appear to be debilitated at this time, ***his age and cardiac history would place him in a high risk category in the setting of a Covid-19 infection.***

(Gov't's Ex. 2) (emphasis added).  Accordingly, the Court finds that Mr. Walker's age and medical conditions warrant compassionate release.

The Court also finds that the current situation at FMC Lexington increases his risk of contracting the disease.  While the Government suggests that Mr. Walker should be safe because the Warden is following BOP procedures, (Gov't's Opp'n at 8-14), this assertion appears to ignore the reality of the situation at the facility.  To date, six inmates at FMC-Lexington have died of COVID-19, including one in the short time that passed between Mr. Walker's present motion and his subsequent response.  (Def.'s Reply [Doc. No. 278] at 6); COVID-19: Coronavirus, Federal Bureau of Prisons,

12

https://www.bop.gov/coronavirus/ (last accessed June 26, 2020).  Moreover, at least 78 new inmates have tested positive for the virus in June.  (Def.'s Mem. at 8.)  Thus, the facility now has the fifteenth highest total for confirmed active cases among all federal prisons and seventh highest in inmate deaths.  (*Id*.) (citing COVID-19: Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/).  Although the Government describes several measures taken by the BOP to modify procedures in response to the pandemic, (Gov't's Opp'n at 9), the cases of COVID-19 at FMC-Lexington appear to be increasing, and show no sign of abating.

The Court therefore finds that Mr. Walker is particularly at risk because his confinement at FMC-Lexington necessarily exposes him to COVID-19, a potentially deadly virus to which he is particularly susceptible.  Indeed, the Court finds that Mr. Walker's present circumstance is consistent with the extraordinary and compelling reasons warranting release outlined by the Sentencing Commission's policy statement.

### 2. General § 3553 Sentencing Factors and Danger to the Community

As explained above, under § 3582(c)(1)(A), the Court must give due "consider[ation to] the factors set forth in section 3553(a) to the extent they are applicable."  In fashioning the appropriate sentence, the Court weighed these factors when it sentenced Mr. Walker in 2014.  He committed extraordinarily serious crimes that caused significant harm to his victims, and he deserved a very significant sentence.  He has since served six years and the evidence, as set out by Mr. Walker's counsel, reflects that he has had an exemplary record while imprisoned with only three incidents, the most recent of which was three years ago,

and none of which involved an altercation of any kind.  He has completed programming to better himself as his medical conditions and placements have allowed, including 13 continuing education classes.  (Def's Mem. at 21.)

Additionally, two of his current severe ailments were not present at the time of sentencing.[4]  For instance, although the Government represents that he had psoriatic arthritis in 2014, it does not assert that he had Stage III chronic kidney disease or atrial fibrillation.  (Gov't's Opp'n at 6.)  The Court therefore finds the nature and circumstances of Mr. Walker's offense conduct, while serious, appear to be mitigated by his characteristics as he now comes before the Court.

And, while the length of time remaining on his sentence is significant, the Court agrees with numerous district courts that have found similar circumstances to justify compassionate release—while fully acknowledging the seriousness of the offense—when an inmate like Mr. Walker presents with significant vulnerability and low-risk of re-offending.  *See*, *e.g.*, *United States v. McKinney*, No. 6:18-cr-6035, [Doc. No. 42] (W.D.N.Y. June 4, 2020) (granting compassionate release where inmate served two years of his ten-year sentence); *United States v. Peterson*, No. 7:12-cr-15, [Doc. No. 63] (E.D.N.C. June 4, 2019) (granting compassionate release where inmate served approximately 91 months of his 132-month term sentence); *United States v. Kelley*, No.

---

[4]  In any event, even if the Government now argues that Mr. Walker had these ailments in 2014 or the Court could have otherwise anticipated that certain conditions would have worsened, like his kidney disease, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. 1B1.13 cmt. n.2.

14

16-cr-00038-SI-1, 2020 WL 2850280, at *3-4 (N.D. Cal. June 2, 2020) (granting compassionate release where inmate served 49 months of his 120-month term sentence); *United States v. Delgado*, No. 3:18-cr-17-(VAB)-1, 2020 WL 2464685, at *1, 4 (D. Conn. Apr. 30, 2020) (granting compassionate release where inmate served 29 months of his 120-month sentence because he was "at high risk for serious complications due to COVID-19"); *United States v. Winston*, No. 1:13-cr- 00639, [Doc. No. 295] (D. Md. Apr. 28, 2020) (granting compassionate release where inmate faced serious medical conditions and vulnerability to COVID-19 after serving 36 months of his 120-month sentence). Here, Mr. Walker has similarly demonstrated that his sentence served to date is sufficient in light of his age and medical conditions to deter him from further criminal conduct, protect the public, and promote respect for the law.

Moreover, Mr. Walker's current state only presents a slight, if any, threat of danger to the community if released. The parties agree he has no record of violence. Although the Government argues that he continues to have a proclivity to defraud victims and poses a "severe economic damage danger to the community," (Gov't's Opp'n at 19), it does not produce any evidence that he maintains any current ties with the individuals that assisted him in taking advantage of unwary victims. Mr. Walker proffers that he will live with his daughter, Ms. Melanie Bonine, upon his release from prison and that the United States Probation Office has approved her residence as suitable. He will moreover be closely monitored by a United States Probation Officer during his term of supervision. Accordingly, in light of his severe medical conditions and his disciplinary record in prison,

the Court will use its tools of supervised release to balance the concerns raised by the Government with protecting Mr. Walker's health.

When a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). In doing so, the court may modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a "substitute for imprisonment." U.S.S.G. § 5F1.2; *see* 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release"). The Court finds home detention is a substitute for imprisonment in this case. *See United States v. Alvarado*, No. 18-cr-283 (NEB/TNL), 2020 WL 3041504, at *2 (D. Minn. May 27, 2020) (finding home detention was a substitute for imprisonment satisfying the § 3553(a) factors) (citation omitted)). The Court therefore orders Mr. Walker's release from custody and requires him to serve the first 12 months of supervised release in home detention at his daughter's residence.

### III.   ORDER

Based on the foregoing and on all the files, records, and proceedings herein, Defendant's Motion for Release is **GRANTED**.  Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court reduces Mr. Walker's term of incarceration such that he is released from the custody of the Bureau of Prisons;

2. Mr. Walker is placed on supervised release and the Court re-imposes the terms and conditions of supervised release as set forth in the October 2, 2014 Judgment [Doc. No. 202] with the following amendments:

    a. The defendant shall serve the first twelve (12) months of supervised release on home detention, at the defendant's daughter's home, which has been approved by the United States Probation Office;

    b. During home detention, the defendant shall be restricted to his residence at all times except for: employment; education; religious services; medical, substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the probation officer;

    c. In its discretion, the United States Probation Office may utilize appropriate location monitoring technology to ensure defendant's compliance with home incarceration; and

3. The execution of this order is stayed for ten (10) days to allow the Bureau of Prisons and U.S. Probation an opportunity to make the necessary arrangements for Mr. Walker's release.

Dated:   June 26, 2020                             s/Susan Richard Nelson
                                                                                 SUSAN RICHARD NELSON
                                                                                 United States District Judge